**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ISLIP U-SLIP LLC,**

                                                            **Plaintiff,**

           **vs.**                                                          **3:13-cv-0350**
                                                                            **(MAD/DEP)**

**GANDER MOUNTAIN COMPANY,**

                                                            **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**HINMAN, HOWARD & KATTELL, LLP**        **JEANETTE N. SIMONE, ESQ.**
80 Exchange Street
P.O. Box 5250
Binghamton, New York 13902
Attorneys for Plaintiff

**POPE & SCHRADER, LLP**                   **ALAN J. POPE, ESQ.**
2 Court Street, 2nd Floor
Binghamton, New York 13902
Attorneys for Defendant


**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

           On March 27, 2013, Plaintiff commenced this action in diversity alleging claims for

common law breach of contract, constructive trust, and indemnification arising out of Defendant's

alleged breach of a commercial lease.[1]  _See_ Complaint, Dkt. No. 1 ("Compl.").  Presently before

_____

           [1] Prior to the commencement of the instant action, Gander Mountain Company filed a
complaint against Islip U-Slip LLC arising out of the same events at issue here.  On February 11,
2013, this Court granted Islip U-Slip's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and
dismissed that complaint in its entirety.  _See Gander Mountain Company v. Islip U-Slip LLC_,
Case No. 3:12-cv-800, Dkt. No. 26 (Feb. 11, 2013).  Gander Mountain has since appealed certain

the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 10. Plaintiff has opposed the motion to dismiss. *See* Dkt. No. 20.

## II. BACKGROUND[2]

Plaintiff Islip U-Slip LLC ("Islip") is a Delaware limited liability company with its principal place of business in Huntington, New York. Defendant Gander Mountain Company ("Gander Mtn.") is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Gander Mtn. operates the nation's largest network of retail stores for hunting, fishing, camping, and marine products and accessories.

In 2004, Gander Mtn. entered into negotiations to lease a building located at 428 Harry L. Drive Johnson City, New York (the "Premises"), for operation as a retail store. At the time, the Premises were owned by Pathmark Stores, Inc. On April 16, 2004, Gander Mtn. entered into a fifteen-year lease, which included terms regarding, *inter alia*, the payment of rent, property taxes, and utilities, the maintenance of certain insurance, the duty to repair and restore the Premises in the event of damage or destruction, and indemnification (the "Lease").

On December 3, 2007, Pathmark and its assets, including the Premises, were acquired by Great Atlantic and Pacific Tea Company ("A&P"). A&P then sold the Premises to Islip on July 8, 2010. Prior to that sale, on July 7, 2010, Gander Mtn. executed a Tenant Estoppel certificate to Islip, confirming notice of the sale of the Premises to Islip.

---

aspects of that order to the Second Circuit Court of Appeals. That appeal is currently pending. *See* Case No. 13-912-CV.

[2] This background is derived from the allegations in Plaintiff's Complaint. Plaintiff's allegations are presumed to be true only for the purposes of this motion, and do not constitute findings of fact by the Court.

In June of 2006, an extraordinary flood event caused the Premises to flood.  Gander Mtn. closed the Premises for approximately three months to conduct repairs and restoration.  During that time, Gander Mtn. continued to pay rent and otherwise complied with its obligations under the Lease.  In September 2011, another extraordinary flood event took place, once again causing the Premises to flood.  On October 19, 2011, Gander Mtn. publicly announced that it would not reopen its Johnson City store.  Islip alleges that although Gander Mtn. was not obligated to continue to operate a retail store at the Premises, it was nevertheless required to repair and restore the Premises.  Gander Mtn. was also required to place any insurance proceeds, along with any deductible carried by Gander Mtn., in an escrow account.  Finally, Islip contends that, the closure of its store notwithstanding, Gander Mtn. was obligated to continue to pay rent.  For some time following the 2011 flood event, Gander Mtn. complied with its obligations under the Lease.

On May 11, 2012, Gander Mtn. informed Islip that it believed the Lease was terminated and that, effective May 1, 2012, Gander Mtn. would no longer comply with its obligations under the Lease.  Gander Mtn. thereafter ceased paying rent and complying with its other Lease obligations.  Gander Mtn. claimed, as the basis for this position, that at the time it entered into the Lease, Pathmark had failed to disclose adequate information regarding historical flood events affecting the Premises.  Moreover, Gander Mtn. claimed that, as a result of 2006 and 2011 flood events, it was no longer able to obtain an all-risk insurance policy, as required under the Lease.

Thereafter, Gander Mtn. filed a complaint in this Court seeking a declaratory judgment that the Lease was either terminated or rescinded.  Islip sent a letter to Gander Mtn. on June 26, 2012, stating its view that Gander Mtn.'s litigation position was frivolous and requesting that the complaint be withdrawn.  Gander Mtn. declined to withdraw its complaint, and Islip filed a pre-

answer motion to dismiss. As noted above, Islip's motion to dismiss was granted and Gander Mtn.'s complaint was dismissed in its entirety.

In the instant Complaint, Islip claims that Gander Mtn. has breached the terms of the Lease by failing to pay rent, failing to pay additional rent (property taxes), failing to pay late fees, failing to repair and restore the Premises, failing to maintain the Premises, and failing to maintain the requisite insurance. Islip also claims that it is entitled to all insurance proceeds and deductibles related to the Premises for claims covering, *inter alia*, repair and restoration, rent, and store contents. Finally, Islip claims that Gander Mtn. is obligated to indemnify Islip for its attorney's fees and costs for its defense of the earlier action instituted by Gander Mtn. and dismissed by this Court.

### III. DISCUSSION

**A.      Legal Standard**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings without considering the substantive merits of the case. *See Global Network Commc'ns v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006); *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself" unless all parties are given a reasonable opportunity to submit extrinsic evidence. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

"In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein." *Robinson v. Town of Kent*, No. 11 Civ. 2875, 2012 WL 3024766, *4 (S.D.N.Y. July 24, 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient facts "to sho[w] that the pleader is entitled to relief[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555, and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

In considering a motion to dismiss, the Court may consider documents attached as an exhibit thereto or incorporated by reference, documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted). To incorporate a document by reference, "the Complaint must make a clear, definite and substantial reference to the document[ ]." *Id.* at 275-76 (citations omitted).

Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, [ ] matters of which judicial notice may be taken, or [ ] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."). Notably, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153.

"Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). Thus, while a court must convert a motion to dismiss for failure to state a claim into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court," Fed. R. Civ. P. 12(d), conversion is not required if the court disregards the extrinsic material. *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006) (matters outside the pleadings presented to

the court were "excluded" within the meaning of Rule 12(d) by the district court's explicit refusal to consider the outside materials).

**B.     Analysis**

Gander Mtn. argues that Islip's claims are deficient in several respects.  First, as to Islip's breach of contract claim, Gander Mtn. argues that the Lease expressly prohibits rent acceleration and, therefore, Islip cannot bring a claim for future rents.  *See* Dkt. No. 10 at 10-11.[3]  Gander Mtn. further argues that Islip cannot bring a claim based upon Gander Mtn.'s alleged failure to repair and restore the Premises when Islip has proof that such repairs have been made and because Islip has, by its own conduct, impeded the issuance and cashing of insurance proceeds. *Id.* at 11-12.  Gander Mtn. also contends that Islip's breach of contract claim based upon Gander Mtn.'s purported failure to insure the Premises fails because it is impossible for Gander Mtn. to obtain an all-risk policy and the Premises are, in fact, insured as an empty space.  *Id.* at 12-13.

Second, Gander Mtn. argues that Islip has not stated a claim for constructive trust because it has failed to allege the existence of a fiduciary or confidential relationship and that it has no adequate remedy at law.  Gander Mtn. also argues that there has been no transfer of funds, and thus, there can be no cause of action for constructive trust.  *Id.* at 13-15.

Last, Gander Mtn. contends that Islip's indemnification claim fails under applicable law. More specifically, Gander Mtn. argues that the indemnification clause in the Lease is insufficient to overcome the presumption that each party bear its own fees and costs.  *Id.* at 15-17.

**1.     Breach of Contract**

---

[3] Citations to page numbers of documents identified by docket entry number are to the page numbers assigned by the Court's electronic filing system.

The parties agree that New York law applies to this dispute. *See* Dkt. No. 10 at 9; Dkt. No. 20 at 11. New York law provides that in order "to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). "Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide'" and where the contract is unambiguous, a court is "'required to give effect to the contract as written.'" *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (citations omitted).

It is well accepted that courts should construe contracts according to the parties' intent as derived from the contracts' unambiguous terms. The parties' intent is derived "from the plain meaning of the language employed in the agreements," *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999) (quotation and citation omitted), when the agreements are "read as a whole," *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990). Divining the parties' intent requires a court to "give full meaning and effect to all of [the contract's] provisions." *Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010) (quotation and citation omitted). Courts must avoid "interpretations that render contract provisions meaningless or superfluous." *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) (citations omitted). When the parties' intent is clear – *i.e.*, unambiguous – the contract "must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272 (2005)). A contract is unambiguous where the contract's terms have "a definite and precise meaning, as to which there is no

reasonable basis for a difference of opinion." *Lockheed Martin,* 639 F.3d at 69 (citing *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264 (2007)).

If reasonable minds could differ about the meaning of contractual language, however, such language is ambiguous. *Lockheed Martin,* 639 F.3d at 69 (describing contractual language as ambiguous when it "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement"). The Court must then turn to extrinsic evidence to determine the parties' intent. *See State v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985) (per curium). While extrinsic evidence generally may not vary or contradict the terms of a fully integrated document, it may be used to interpret facially ambiguous language in the contract. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 69 (2d Cir. 2008).

### a.    Future Rents

"New York law states that absent an acceleration clause in a lease, the breach of a lease does not entitle a landlord to make a claim for all future rents under the lease." *Sherwood 1600 Associates v. Wyman*, 95 CIV. 6505 (HB), 1996 WL 457331, *2 (S.D.N.Y. Aug. 14, 1996) (citing *Muss v. Daytop Village, Inc.*, 352 N.Y.S.2d 28, 29 (2d. Dept. 1974)); *see also Gotlieb v. Taco Bell Corp.*, 871 F. Supp. 147, 155 (E.D.N.Y. 1994) (noting that "[i]n the absence of an acceleration clause no action may be brought for future rent" and holding that plaintiff landlord was not entitled to future rents under the lease). As one New York court has stated:

> While the right to sue for past due rents accrues upon the failure of the tenant to pay, and the past due rents may be sued for in monthly suits upon each default or in a joinder of causes of action for any sums past due, the right to sue for damages for the breach of a lease accrues, generally, upon the termination date of the lease; and suits for separate items of damages in instalments are prohibited, unless the parties expressly agree to a contrary procedure.

*Muss*, 352 N.Y.S.2d at 29 (citing, *inter alia*, *Hermitage Co. v. Levine*, 248 N.Y. 333 (1928)).

It is undisputed that the Lease does not contain a rent acceleration clause. *See* Dkt. No. 1-1; Dkt. No. 10 at 11; Dkt. No. 20 at 12. In fact, the Lease specifically prohibits acceleration of rents: "Notwithstanding anything to the contrary contained in this Lease, Landlord shall not have any right to accelerate Base Rent, Percentage Rent or Additional Rent hereunder." Dkt. No. 1-1 § 17.1. Plaintiff attempts to argue that despite the absence of an acceleration clause in the Lease, it is nevertheless entitled to "damages" in the form of future rents (or their present value) and diminution in value of the Premises, because Defendant has committed an anticipatory breach. That is, since Gander Mtn. has informed Islip that it will no longer fulfill its obligations under the Lease, including the payment of rent, Islip claims that it is entitled to damages for total breach. Dkt. No. 21 at 12-14. Plaintiff's arguments fail to address the basis for Defendant's motion to dismiss, which is that Plaintiff has failed to state a claim for future rents.

"Under th[e] doctrine [of anticipatory breach], if one party to a contract repudiates his duties thereunder prior to the time designated for performance and before he has received all of the consideration due him thereunder, such repudiation entitles the nonrepudiating party to claim damages for total breach." *Long Island R. Co. v. Northville Indus. Corp.*, 41 N.Y.2d 455, 463, (1977) (citations omitted). However, "[t]he doctrine of anticipatory breach has not generally been applied to all types of contracts, its application being limited ordinarily to bilateral contracts embodying some mutual and interdependent conditions and obligations." *Id.* As a result, there is a "general principle accepted in New York that, absent an acceleration clause, an aggrieved party to a contract for the payment of money in fixed installments may not, as a general matter, obtain acceleration by a claim of anticipatory breach." *AboveNet Comm'cns, Inc. v. A&D Data Corp.*, No. 08 Civ. 6188, 2010 WL 235005, *5 (S.D.N.Y. Jan. 19, 2010) (citations omitted); *see also*

*Long Island R. Co.*, 41 N.Y.2d at 465 (noting that it is well settled that "no suit can be brought for future rent in the absence of a clause permitting acceleration"); *id.* at 464-65 (discussing reasons for this principle).

Thus, where, as here "[t]here is no acceleration clause in the lease entitling [Plaintiff] to future rents upon a breach thereof[, Plaintiff's] right to future rent has not yet ripened and recovery may only be had for past due rent." *Martin v. Glenzan Associates, Inc.*, 75 A.D.2d 660 (3rd Dept. 1980). This is the issue currently before the Court, and Plaintiff has presented no authority which would convince the Court to hold otherwise. While Plaintiff may be entitled to damages other than future rents as a result of Defendant's alleged breach, Defendant's motion to dismiss Plaintiff's breach of contract claim for future rents is granted.

### b.    Repairs and Restoration

Gander Mtn. seeks dismissal of Islip's breach of contract claim to the extent it is based upon Gander Mtn.'s alleged failure to repair and restore the Premises as required under Section 15 of the Lease. According to Gander Mtn., Islip itself is responsible for preventing the repair work from occurring. Islip has held insurance checks and refused to cooperate with Gander Mtn. and its insurers, thereby precluding the issuance of additional insurance payments and completion of repairs. Moreover, Gander Mtn. contends that is has completed some repairs, and that Islip has proof of such repairs. Dkt. No. 10 at 11-12.

It is clear that Section 15 of the Lease imposes an obligation on Gander Mtn. to repair and restore the Premises:

> If the Premises (including, without limitation, the Building) shall be damaged or destroyed in whole or in part by fire or other casualty during the Lease term, Tenant shall promptly repair and restore the Premises to a condition equal to its condition immediately prior to

> such damage or destruction and in conformity with and pursuant to all applicable requirements of law and duly constituted governmental authority.

Dkt. No. 1-1 § 15.1.  Gander Mtn. does not dispute that it has such an obligation.

In its Complaint, Plaintiff has alleged the existence of a contract, that Defendant breached that contract by failing to make the required repairs, and resulting damages.  At this stage of the litigation, such allegations are sufficient to survive a motion to dismiss.  Gander Mtn.'s defenses, particularly to the extent they are supported by documents outside the four corners of the complaint, are not appropriately considered at this time.  The Court exercises its broad discretion and declines Gander Mtn.'s invitation to convert its motion to dismiss into one for summary judgment, since conversion would not be "likely to facilitate the disposition of the action." *Stephens v. Bayview Nursing and Rehab. Ctr.*, No. 07-CV-0596, 2008 WL 728896, *2 (E.D.N.Y. Mar. 17, 2008).  Generally, these factual issues are more appropriately resolved after the parties have had an opportunity for discovery.  *See Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006) (finding that "[t]here would be little point in considering a summary judgment motion when significant relevant facts may yet be discovered").  More specifically, the Court is aware that Gander Mtn. has publicly announced its intention to reopen the Johnson City store in April 2014.  *See* Press Release, *Spring Reopening Planned for Johnson City Gander Mtn.* (Jan. 21, 2014), *available at* http://www.gandermountain.com/customer-service/about-us/news/2014/01212014.shtml.  Thus, it would appear that any ruling which considered extraneous facts would, at this time, necessarily be made on an incomplete record.  *See Express Lien Inc. v. National Ass'n of Credit Management Inc.*, 2013 WL 4517944, *3 n.35 (E.D. La. Aug. 23, 2013) ("Given the early stage of the proceedings and the limited and incomplete record with respect to the claims asserted in this

matter, this Court declines the opportunity to convert the motion to dismiss into a motion for summary judgment in order to consider the materials outside the pleadings"). Accordingly, Defendant's motion to dismiss Plaintiff's claim for breach of contract based upon Defendant's failure to repair and restore the Premises is denied.

### c.    Insurance

Gander Mtn. seeks dismissal of Islip's breach of contract claim based upon its alleged failure to insure the Premises as required under Section 12 of the Lease. Gander Mtn. argues that despite its diligent efforts, it has been unable to obtain an all-risk insurance policy to cover the building and its inventory, as required under the Lease. That is, as a result of the history of major flooding events that have affected the Premises, no insurer is willing to offer such a policy. Since it was unable to purchase an all-risk policy, Gander Mtn. obtained building and property policies covering the Premises as an empty space, which Gander Mtn. argues is sufficient to fulfill its obligations under the Lease. Gander Mtn. states that Islip possesses Certificates of Insurance for these policies, and thus, Islip has no good faith basis to make this claim. Dkt. No. 10 at 12-13. Subsequent to the filing of its motion to dismiss and reply, Gander Mtn. submitted a letter to the Court stating that Gander Mtn. "learned that certain insurance coverage for the contents of its Gander Mountain store was available[.]" Dkt. No. 24. Gander Mtn. contends that this should not affect the disposition of the instant motion because, according to its interpretation, the Lease permits it to insure the Premises as an empty building. *Id.*

In response, Islip argues that the Lease unambiguously requires Gander Mtn. to maintain an all-risk policy. Moreover, the fact that no insurer was willing to offer such a policy on the Premises would not excuse Gander Mtn.'s performance of this obligation, as the Lease expressly

permitted Gander Mtn. to self-insure.  Finally, Islip argues that Gander Mtn. impermissibly relies on documents outside the Complaint in support of its motion to dismiss.

Section 12.2 of the Lease provides:

> Tenant shall, commencing on the Commencement Date and continuing during the Lease term, keep in full force and effect an all risk policy of insurance insuring (a) to at least eighty percent (80%) of their full replacement value Tenant's merchandise, trade fixtures, furnishings, equipment and all other items of personal property of Tenant located on or within the Premises; and (b) to its full replacement value, all buildings and improvements on the Premises. Such insurance may be furnished by Tenant under any blanket policy carried by it, under a separate policy therefor or through Tenant's self-insurance. . . .

Dkt. No. 1-1 § 12.2.  This language unambiguously obligates Gander Mtn. to maintain an all-risk insurance policy on the Premises.  Islip has alleged that Gander Mtn. failed to do so.   At this stage of the litigation, Islip's allegations are sufficient to survive a motion to dismiss.  For the same reasons discussed above with respect to the repair and restoration claim, questions such as whether such insurance was available to Gander Mtn., whether Gander Mtn. possessed insurance sufficient to fulfill its obligations, or whether Gander Mtn. has any other valid defenses to this claim are more appropriate resolved after the factual record has been developed.  As also discussed above, Gander Mtn. has informed the Court that all-risk insurance is now available to it and has publicly announced its intention to reopen the Johnson City store in April 2014.  Thus, any ruling on this issue at this time would also necessarily be made on an incomplete record.  Accordingly, Defendant's motion to dismiss Plaintiff's claim for breach of contract based upon Defendant's failure to maintain adequate insurance for the Premises is denied.

### 2. Constructive Trust

Under New York law, the elements of a constructive trust are: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that

promise; and (4) unjust enrichment." *In re Ades and Berg Group Investors*, 550 F.3d 240, 245 (2d Cir. 2008) (citing *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976)). The Second Circuit has noted that "[a]lthough these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be rigidly limited." *Counihan v. Allstate Insurance Co.*, 194 F.3d 357, 362 (2d Cir. 1999) (internal quotations and citations omitted).

Moreover, "New York courts have clarified that '[a]s an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate.'" *In re First Central Financial Corp.*, 377 F.3d at 215 (quoting *Bertoni v. Catucci,* 117 A.D.2d 892, 895, 498 N.Y.S.2d 902, 905 (1986)). Thus, "where a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists," and a constructive trust should not be imposed. *Id.*; *see also Abraham v. Am. Home Mortgage Servicing, Inc.*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) (noting that "[i]t is well established that the existence of a contract precludes a claim for a constructive trust").

Thus, in order to establish a claim for constructive trust, the plaintiff must make an allegation that such claim is not merely "duplicative of the breach of contract claim" and must "allege [ ] distinct harm or actions giving rise to a[ ] separate claim of [ ] constructive trust." *Spanierman Gallery PSP, LLC v. Love,* No. 03 Civ. 3188, 2003 WL 22480055, *4 (S.D.N.Y. Oct. 31, 2003). That is, a constructive trust is a remedy imposed "when property has been acquired under such circumstances that the holder of legal title may not in good conscience retain the beneficial interest therein." *Sec. Pac. Mortgage and Real Estate Serv., Inc. v. Rep. of Phil.,* 962 F.2d 204, 210 (2d Cir. 1992) (quoting *Scivoletti v. Marsala,* 97 A.D.2d 401, 402, 467 N.Y.S.2d 228, 230 (2d Dept. 1983)).

Gander Mtn. argues that Islip has failed to state a claim for constructive trust because it

has not alleged the existence of a confidential or fiduciary relationship between Gander Mtn. and Islip, and because Islip has not alleged that it has no adequate remedy at law. Gander Mtn. also makes a fact-based argument that no transfer of insurance funds has occurred, and thus, Islip cannot satisfy the corresponding element of a claim for constructive trust. *See* Dkt. No. 10 at 14-15.

Islip acknowledges that New York law does not typically recognize a fiduciary relationship in the commercial landlord-tenant context. Islip contends that such a relationship should be found here because Gander Mtn. was contractually obligated to procure and maintain insurance for Islip's benefit, and apply any insurance proceeds to repair and restoration for Islip's benefit. Islip next contends that its breach of contract and constructive claims stand separate and apart from one another because if the Lease is found to be unenforceable, Islip is entitled to a constructive trust over the insurance proceeds. Finally, Islip argues that it has sufficiently pleaded a transfer of insurance funds, and that Gander Mtn.'s argument impermissibly relies on evidence outside the four corners of the Complaint. *See* Dkt. No. 20 at 17-19.

Islip is correct that a plaintiff's failure to plead each element of a constructive trust claim is not necessarily fatal at the motion to dismiss stage. Nevertheless, a plaintiff who fails to make any allegations regarding the insufficiency of a remedy at law has not shown that he is entitled to a constructive trust. *See Pena v. Guzman*, No. 03 Civ. 5130(SHS), 2004 WL 253331, *2-3 (S.D.N.Y. Feb. 11, 2004). The cases cited by Islip in its opposition do not address this issue, nor does Islip cite to any allegations in its Complaint which would satisfy this requirement.[4]

---

[4] Since the Court concludes, for the reasons set forth herein, that Islip has failed to sufficiently allege the inadequacy of a remedy at law, it need not reach Gander Mtn.'s arguments with respect to the existence of a fiduciary relationship and a transfer of funds.

Islip has alleged the existence of a contract, that Gander Mtn. breached that contract, and that Islip suffered monetary damages as a result. Islip does not, however, make any allegations which would provide a basis for this Court to find that a legal remedy – *i.e.*, monetary damages – would be inadequate to make it whole under these circumstances. *Pena*, 2004 WL 253331, at *3 ("Plaintiff is not entitled to a constructive trust because he has not demonstrated that the available legal remedy, i.e., money damages, is inadequate to fully compensate for the damage he allegedly suffered."). Moreover, this Court has rejected Gander Mtn.'s attempt to challenge the validity of the Lease. *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351 (N.D.N.Y. 2013). Thus, Islip is precluded from bringing a constructive trust claim. *Abraham*, 947 F. Supp. 2d at 235 ("Because [the plaintiff] alleges the existence of contracts – indeed, one of her other claims is for breach of these contracts – she is precluded from asserting a claim for a constructive trust.").

The Court also notes that in Islip's attempt to demonstrate the existence of a fiduciary relationship between it and Gander Mtn., Islip highlights certain promises made by Gander Mtn. in the Lease, which Islip contends Gander Mtn. has failed to fulfill. Islip's own argument makes clear that this is a garden-variety action for breach of contract, and thus, Islip has failed to state a claim for constructive trust. *See Brenner v. Heller*, 1:11-CV-481 NAM, 2011 WL 6011786, *3 (N.D.N.Y. Nov. 30, 2011) (finding that the plaintiff's contract claim "establishe[d] the absence of unjust enrichment, the fourth element of a constructive trust"). Accordingly, Defendant's motion to dismiss Plaintiff's constructive trust claim is granted.

### 3. Indemnification

"Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491

(1981) (citations omitted). "It is not uncommon, however, for parties to a contract to include a promise by one party to hold the other harmless for a particular loss or damage and counsel fees are but another form of damage which may be indemnified in this way." *Id.* (citations omitted). In any event, "[p]romises by one party to indemnify the other for attorneys' fees run against the grain of the accepted policy that parties are responsible for their own attorneys' fees." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (citing *Hooper*, 74 N.Y.2d at 492). Thus, it is well-established under New York law that "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties die not intend to be assumed." *Hooper*, 74 N.Y.2d at 491 (citations omitted). That is, "[t]he promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.* at 491-92 (citations omitted).

Courts in the Second Circuit have employed the following principles of construction to determine whether indemnification provisions are intended to include attorneys' fees in suits between the parties to the contract: (1) the analysis begins with the presumption that the agreement does not cover attorneys' fees in an action between the parties; (2) a provision containing only broad language that does not unequivocally indicate that the parties intended to indemnify attorneys' fees will not support such a claim; (3) if it is apparent that no third-party claims were contemplated by the parties, the agreement should be construed to provide indemnity for claims between the parties; (4) likewise, if future third-party claims were possible at the time of the contract, there should be no indemnification for suits between the parties; and (5) indemnification provisions that specifically distinguish third-party claims from interparty claims

indicate an intent to cover claims between the parties.  *In re Refco Securities Litig.*, 890 F. Supp. 2d 332, 343-44 (S.D.N.Y. 2012).

Defendant contends that "the Lease indemnification provision unambiguously contemplates indemnity for third-party claims, not attorney's fees for the prevailing party in litigation" between the parties to the Lease.  Dkt. No. 10 at 16.  Here, the indemnification clause provides:

> Tenant's Indemnification. Tenant agrees to protect, indemnify and save the Landlord and any ground and underlying lessors of the Premises harmless from and against any and all claims, and against any and all loss, cost, damage or expense, including without limitation, reasonable attorneys' fees, arising from:
>
> 13.1.1 Premises. Any accident, injury or damage whatsoever caused to any person or property arising directly or indirectly out of the business conducted in the Premises or occurring in, on, or about the Premises or any part thereof or on the sidewalks adjoining the same, or arising directly or indirectly from any act or omission of Tenant or any concessionaire or subtenant or their respective licensees, servants, agents, employees or contractors, and from and against any and all costs, expenses and liabilities incurred in connection with any such claim or proceeding brought thereon; provided, however, Tenant's obligations under this Section shall not apply to injury or damage resulting from gross negligence or willful misconduct of Landlord or any such ground or underlying lessors or their respective agents, contractors or employees unless Tenant is compensated therefor by insurance;
>
> 13.1.2 Negligence. Any injury or damage to any person or property resulting from the negligence or willful misconduct of Tenant, its agents, contractors or employees; provided, however, Tenant's obligations under this Section shall not apply to injury or damage resulting from the gross negligence or willful misconduct of Landlord or any such ground or underlying lessors or their respective agents, contractors or employees unless Tenant is compensated therefor by insurance;
>
> 13.1.3 Noncompliance. Noncompliance with any federal, state or local laws, rules, orders and regulations; provided, however, Tenant's obligations under this Section shall not apply to injury or damage resulting from the gross negligence or willful misconduct

of Landlord or any such ground or underlying lessors or their respective agents, contractors or employees unless Tenant is compensated therefor by insurance; or

13.1.4 Representations and Warranties. Any breach of Tenant's representations or warranties in this Lease.

13.1.5 Survival. This indemnity shall survive the expiration or earlier termination of this lease.

Dkt. No. 1-1 § 13.

Plaintiff argues that Sections 13.1.1 and 13.1.4 "expressly appl[y] to litigation between Gander and Islip." Dkt. No. 20 at 21. First, as to Section 13.1.1, Plaintiff notes that this litigation arose out of damage to the property. Second, Plaintiff contends that Gander Mtn.'s challenge to the validity of the Lease in the case earlier dismissed by this Court constitutes a breach of a warranty under Section 13.1.4. *Cf.* Dkt. No. 1-1 § 20.3 ("Tenant represents and warrants to Landlord: [ ] This Lease is valid and binding upon Tenant."). Plaintiff attempts to rebut the presumption under the law that the indemnification provision does not include attorney's fees in an action between the parties by pointing out that there is no reference to "third-party claims" in Section 13 of the Lease. Plaintiff also claims that Section 13.1.4 cannot apply to third parties and is clearly intended to apply to claims between the contracting parties. Plaintiff's arguments are unavailing.

Upon a review of the language contained in Section 13.1.1, the Court concludes that it is not sufficient to unequivocally indicate that the parties intended to indemnify attorneys' fees. This broad language is clearly addressed to claims made by third-parties. Despite Plaintiff's claims, the absence of the term "third-party" is not dispositive. In fact, it is clear that at the time the parties entered into this agreement, claims made by third-parties was a substantial possibility,

since the Premises would be used as a retail location for the sale of hunting and fishing equipment.

Contrary to Plaintiff's contention, the language used in Section 13.1.4 was not "unequivocally intended to permit indemnification of Islip in a dispute between Islip and Gander." Dkt. No. 20 at 22. This language is nearly identical to the language before the New York Court of Appeals in *Hooper*. There, the Court found that

> [t]he clause in this agreement does not contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant. On the contrary, it is typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim. It obligates defendant to "indemnify and hold harmless plaintiff from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees" arising out of breach of warranty claims[.] None are exclusively or unequivocally referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract.

*Hooper*, 74 N.Y.2d at 492.

Here, there is no language in the Lease which indicates an intention to treat third-party claims differently from claims between the parties, and thus, there is no indication that the Lease provides for Plaintiff's indemnification claim. *See Bourne Co. v. MPL Communications, Inc.*, 751 F. Supp. 55, 57 (S.D.N.Y. 1990) (rejecting the plaintiff's argument "that the language in the Agreement which refers to breach of covenants, warranties or representations in the contract can only refer to claims between the parties, and thus supports the inference that the Agreement contemplated the reimbursement of attorneys' fees in litigation between the parties to the Agreement"). Accordingly, Defendant's motion to dismiss Plaintiff's claim for indemnification is granted.

## IV. CONCLUSION[5]

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**[6]; and the Court further

**ORDERS** that Plaintiff's breach of contract claim for future rents is **DISMISSED** with prejudice; and the Court further

**ORDERS** that Plaintiff's constructive trust claim is **DISMISSED** with prejudice; and the Court further

**ORDERS** that Plaintiff's indemnification claim is **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  February 27, 2014
          Albany, New York

_____
**Mae A. D'Agostino**
**U.S. District Judge**

---

[5] Although Plaintiff has not sought leave to amend its Complaint, the Court notes that amendment would be futile.  The Court has found as a matter of law that the Lease does not permit Plaintiff to recover for future rents or seek indemnification.  With respect to Plaintiff's constructive trust claim, the Court has concluded that such claim is duplicative of Plaintiff's breach of contract claim and, therefore, cannot be maintained.  Since no amendment could remedy these defects, any such amendment would be futile.  *See Oneida Indian Nation of N.Y. v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003), *rev'd on other grounds*, 544 U.S. 197 (2005) (holding that "amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)").

[6] As a result of this Memorandum-Decision and Order, the only remaining claim is Plaintiff's breach of contract claim, although Plaintiff may not pursue such claim for future rents.